**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| ANDREA L. GARNER, | No. 19-35055 |
| Plaintiff-Appellant, | D.C. No. 3:17-cv-06058-MAT |
| v. | |
| ANDREW M. SAUL, Commissioner of Social Security, | MEMORANDUM* |
| Defendant-Appellee. | |

Appeal from the United States District Court
for the Western District of Washington
Mary Alice Theiler, Magistrate Judge, Presiding

Submitted February 7, 2020**
Seattle, Washington

Before: M. SMITH and N.R. SMITH, Circuit Judges, and TUNHEIM,*** District
Judge.

---

\* This disposition is not appropriate for publication and is not precedent
except as provided by Ninth Circuit Rule 36-3.

\** The panel unanimously concludes this case is suitable for decision
without oral argument. *See* Fed. R. App. P. 34(a)(2).

\*** The Honorable John R. Tunheim, Chief United States District Judge
for the District of Minnesota, sitting by designation.

Andrea Garner appeals the denial of her application for Social Security disability benefits. We have jurisdiction under 28 U.S.C. § 1291, and affirm.

We "review the district court's decision sustaining the [Administrative Law Judge's ("ALJ")] denial of social security benefits de novo and can reverse only if the ALJ's findings are based on legal error or are not supported by substantial evidence in the record." *Attmore v. Colvin*, 827 F.3d 872, 875 (9th Cir. 2016). "Substantial evidence means more than a mere scintilla, but less than a preponderance. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Revels v. Berryhill*, 874 F.3d 648, 654 (9th Cir. 2017) (quoting *Desrosiers v. Sec'y of Health & Human Servs.*, 846 F.2d 573, 576 (9th Cir. 1988)). Additionally, we "may not reverse an ALJ's decision on account of a harmless error." *Buck v. Berryhill*, 869 F.3d 1040, 1048 (9th Cir. 2017).

1.     The ALJ did not err in evaluating the medical evidence. Contrary to Garner's assertions, the record shows that the ALJ considered the limitations specified in Dr. Wingate's testimony when determining Garner's Residual Functional Capacity ("RFC"). Moreover, even assuming the ALJ's determination was in error, Garner has not carried her burden to show that such error was harmful. *See Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012).

Indeed, Garner has failed to show how Dr. Wingate's opinion is inconsistent with the ALJ's RFC assessment or should lead to a different result than that reached by the ALJ.

Nor did the ALJ err in finding Ms. Evans's statement unpersuasive. Although Ms. Evans, a mental health counselor, was not considered an "[a]cceptable medical source[]" pursuant to the relevant regulations,[1] *see Molina*, 674 F.3d at 1111 (first alteration in original), the "ALJ [could] give less deference to 'other sources' only if the ALJ gives reasons germane to each witness for doing so," *Revels*, 874 F.3d at 655. The district court gave germane reasons for discounting Ms. Evans's statement. For example, the district court found Ms. Evans's statements unconvincing, because they were unaccompanied by treatment

---

[1] At the time the ALJ issued a decision in Garner's case, the regulations distinguished between "[a]cceptable medical sources" and "[o]ther sources." 20 C.F.R. § 404.1513 (2016). The relevant provisions were rescinded in 2017. *See* Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5,844, 5,865 (Jan. 18, 2017). All references to the Social Security Administration regulations herein are to the 2016 regulations unless otherwise noted.

notes.[2]  Additionally, substantial evidence supports the ALJ's conclusion that the overall record did not document depression and anxiety to the degree described by Ms. Evans.  Thus, because the ALJ gave germane reasons for finding Ms. Evans's statement unpersuasive, we affirm this determination.

Finally, the ALJ did not err in giving great weight to the opinion of the non-examining experts.  Garner argues that the opinions of these experts were untimely, because they submitted their reviews more than a year before the hearing date, thus failing to account for evidence post-dating their opinions.  Therefore, Garner posits that the opinions of the non-examining experts should be discredited, because they could not have considered "all of the pertinent evidence in [her] claim."  20 C.F.R. § 404.1527(c)(3).  However, there is always some time lapse between a consultant's report and the ALJ hearing and decision.  The Social Security regulations impose no limit on such a gap in time.  Here, at the time the non-examining experts issued their opinions, they had considered all the evidence

---

[2] Contrary to Garner's arguments, the ALJ had no affirmative duty to subpoena Ms. Evans's treatment notes.  20 C.F.R. § 404.950(d)(1) (noting that an ALJ "*may*, on his or her own initiative or at the request of a party, issue subpoenas" for information that would further develop the record (emphasis added)).  In fact, the record makes clear that the ALJ satisfied her duty to make "every reasonable effort to help [Garner] get medical reports from [her] own medical sources," *id.* at § 404.1512(b)(1), when she made multiple requests for records from Ms. Evans.

before them, thus satisfying the requirements set forth in 20 C.F.R. § 404.1527(c)(3).

To be sure, such a substantial delay would undoubtedly be significant if, in the interim, the ALJ received additional medical evidence that in her opinion may change the expert's finding. *See* SSR 96-6p, 1996 WL 374180, at *3–4 (July 2, 1996). However, Garner gives no explanation as to why the gap in time is significant and points to no subsequently obtained evidence that contradicts the experts' opinions. Thus, even assuming the ALJ did err in ascribing great weight to the opinions of the non-examining experts, Garner's arguments still fail because she did not explain why such error was harmful. *See Molina*, 647 F.3d at 1111.

2. The ALJ's decision to discredit Garner's testimony is supported by substantial evidence. "The ALJ is responsible for determining credibility and resolving conflicts in medical testimony." *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989). In order to discredit a claimant's testimony, the ALJ must provide specific, cogent reasons for discrediting it. *See Greger v. Barnhart*, 464 F.3d 968, 972 (9th Cir. 2006). Though the ALJ identified no less than five specific reasons for rejecting Garner's testimony, Garner maintains that none of these reasons are convincing. However, the ALJ properly identified in its analysis precisely "what testimony is not credible and what evidence undermines the

5

claimant's complaints." *Berry v. Astrue*, 622 F.3d 1228, 1234 (9th Cir. 2010). Furthermore, the reasons provided by the ALJ are supported by substantial evidence in the record. At bottom, because the ALJ provided sufficient reasoning for rejecting Garner's testimony, we do not second-guess its determination. *Rollins v. Massanari*, 261 F.3d 853, 856–57 (9th Cir. 2001).

3.      The ALJ's discounting of lay evidence from Shane Hedberg, Garner's significant other, is supported by substantial evidence. "The ALJ must consider competent lay testimony but in rejecting such evidence, [s]he need only provide reasons for doing so that are 'germane to [the] witness.'" *Carmickle v. Comm'r Social Sec. Admin.*, 533 F.3d 1155, 1164 (9th Cir. 2008) (quoting *Greger*, 464 F.3d at 972). The ALJ had adequate bases for finding Hedberg's testimony not credible. For example, though Hedberg stated that Garner could not lift more than five pounds, the medical evidence suggests that Garner was only limited to lifting not more than twenty pounds occasionally or ten pounds frequently. Because the ALJ's determination is supported by substantial evidence in the record, we affirm.

4.      The ALJ also properly determined Garner's RFC. Garner argues that the ALJ's RFC assessment "is legally erroneous and not supported by substantial evidence." However, Garner's arguments on this point do not differ from those we rejected above. Because (as shown above) the ALJ did not err in its weighing of

6

the medical evidence and Garner fails to show specifically how the RFC is inconsistent with the medical record, the ALJ's determination is affirmed.

5.     Garner's arguments that the ALJ's step five analysis was erroneous are also unavailing.  First, Garner's argument that the vocational expert's testimony has no evidentiary value falls short, because (as determined above) the ALJ's RFC determination (upon which the hypothetical posed to the vocational expert was based) is supported by substantial evidence.  Second, even assuming Garner correctly asserts that several of the jobs listed by the vocational expert were outside her reasoning limitations (as detailed in the RFC), Garner concedes that there is at least one job that satisfies the reasoning level one requirements—that of an optical goods final assembler (DOT 713.687-018).  And because there are at least 30,000 of these jobs nationally, the statutory standard is met.  *See Gutierrez v. Comm'r of Soc. Sec.*, 740 F.3d 519, 528 (9th Cir. 2014) (noting that having 25,000 jobs in the national economy met the statutory standard).  Garner therefore does not qualify for disability.

         **AFFIRMED.**

7